**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**SAM M. YEDIGARYAN et al.,**

                **Plaintiffs,**　　　　　　**1:09-cv-1009**
　　　　　　　　　　　　　　　　　　　　　　　　　　**(GLS/GHL)**
                **v.**

**PENSKE TRUCK LEASING**
**CORPORATION et al.,**

                **Defendants.**
_____

**APPEARANCES:**　　　　　　　　　　**OF COUNSEL:**

**FOR THE PLAINTIFFS:**
The Maurer Law Firm, PLLC　　　　　IRA M. MAURER, ESQ.
300 Westage Business Center Drive
Suite 360
Fishkill, NY 12524

**FOR THE DEFENDANTS:**
*Penske Truck Leasing Corporation*
Carter, Conboy Law Firm　　　　　　BRIAN D. CARR, ESQ.
20 Corporate Woods Boulevard　　　EDWARD D. LAIRD, JR., ESQ.
Albany, NY 12211　　　　　　　　　　STEPHEN M. GROUDINE, ESQ.

*Daimler Trucks North America LLC*
Webster, Szanyi Law Firm　　　　　　THOMAS S. LANE, ESQ.
Buffalo Office　　　　　　　　　　　　KEVIN A. SZANYI, ESQ.
1400 Liberty Building
Buffalo, NY 14202

*Freightliner LLC*
Webster, Szanyi Law Firm　　　　　　THOMAS S. LANE, ESQ.
Buffalo Office
1400 Liberty Building
Buffalo, NY 14202

*Arvinmeritor, Inc.*
Kasowitz, Benson Law Firm
New York Office
1633 Broadway
New York, NY 10019

JOHN C. CANONI, ESQ.
PEGGY L. PAN, ESQ.

*Mac Lean-Fogg Company*
Ahmuty, Demers Law Firm
Albertson Office
200 I.U. Willets Road
Albertson, NY 11507

PATRICK J. PICKETT, ESQ.

**Gary L. Sharpe**
**Chief Judge**

# MEMORANDUM-DECISION AND ORDER

## I. Introduction

This negligence action was commenced by plaintiffs Sam M. Yedigaryan and Clayton H. Hoover, Sr. ("collectively "plaintiffs") as a result of injuries they allegedly sustained in connection with their employment as truck drivers for Penske Logistics, LCC ("Penske Logistics").[1]  (*See* Am. Compl., Dkt. No. 65; Def. Penske Corp.'s Statement of Material Facts ("SMF") ¶ 7, Dkt. No. 106.)  Pending is defendant Penske Truck Leasing Corporation's ("Penske Corp.") motion for summary judgment.  (*See* Dkt.

---

[1] The wives of both Yedigaryan and Hoover have asserted derivative claims against Penkse Corp. as well.  (*See* Am. Compl. ¶¶ 57-60, 111-114.)

2

No. 105.) Plaintiffs oppose the motion on the merits and, alternatively, cross move for additional discovery under Fed. R. Civ. P. 56(d). (*See* Dkt. No. 111.) For the reasons that follow, Penske Corp.'s motion is denied and plaintiffs' cross motion is denied as moot.

## II. Facts[2]

In separate incidents, plaintiffs claim to have sustained personal injuries while driving delivery trucks owned, maintained, and inspected by Penske Truck Leasing Co., LP ("Penske LP"). (*See* Def.'s SMF ¶ 2-4; Pls.' SMF ¶ 15, Dkt. No. 113.) Specifically, the men aver that their injuries were inflicted when "the entire front right wheel assembly fell off the truck[s]" that they were driving. (Am. Compl. ¶¶ 13, 67.) The trucks at issue were leased by Penske Logistics from Penske LP, who both owns and insures them. (*See* Pls.' SMF ¶¶ 14, 27.) Penske Logistics is a wholly-owned subsidiary of Penske LP; moreover, Penske Corp. is the general partner of Penske LP. (*See* Dkt. No. 105, Attach. 9 at 2, Attach. 32 at 67; Def.'s SMF ¶ 1, 6.)

Plaintiffs "employment was based out of 11 Terminal Street in Albany, New York" where Penske Logistics' customer, Freihofer Bakery

---

[2] Unless otherwise stated, the facts are undisputed.

Co. ("Freihofer"), operated a business. (Def.'s SMF ¶¶ 8-11.) Plaintiffs drove exclusively for Freihofer, "driving loads of baked goods to and from 11 Terminal Street," but were paid for their efforts by Penske LP. (*See id.* ¶¶ 11-12.) Plaintiffs also applied for employment with, were hired by, and received job training from Penske Logistics' personnel, (*see* Pls.'SMF ¶¶ 5-9), despite the fact that Penske Logistics cannot "'hire or fire someone without direct contact and communication with the corporate headquarters, the human resource department or the field human resources' personnel at Penske [LP]," (Def.'s SMF ¶ 20). Further, notwithstanding the fact that plaintiffs' employment was based upon the policies of Penske LP, who maintains a single policy manual that sets rules and policies for both companies, Penske Logistics has its own human resources department and is responsible for assessing whether its employees should be disciplined. (*See id.* ¶¶ 17, 19; Pls.' SMF ¶¶ 22, 26.)

Penske Logistics and Penske LP are separate legal entities, yet they share a federal tax identification number and file a joint income tax return. (*See* Def.'s SMF ¶¶ 13-14; Dkt. No. 112, Attachs. 1-2; Pls.' SMF ¶ 12.) Penske LP's Workers' Compensation Unit has also handled the claims of Penske Logistics's employees during the period of time at issue in this

4

lawsuit and was responsible for the payment of the benefits to plaintiffs as well.[3]  (*See* Def.'s SMF ¶¶ 15-16.)  Penske LP has none of its own executive officers nor does it have a board of trustees; Penske Logistics, on the other hand, has 51 executive officers.  (*See* Pls.' SMF ¶¶ 3-4.)  Nonetheless, Penske Logistics and Penske LP "have one, joint annual meeting of their executive officers/advisory members."  (Def.'s SMF ¶ 21.)  In the same vein, the two entities maintain separate internal financial records, account for internal cost and profit centers separately, and have separate internal budgets.  (*See* Pls.' SMF ¶¶13, 16-18.)  The entities also serve different purposes in the same industry.  (*See id.* ¶¶ 25, 31.)  While Penske LP maintains trucks for leasing to its customers, it does not perform transport or warehousing services as does Penske Logistics.  (*See id.* ¶¶ 19-20.)

### III. Procedural History

Plaintiffs filed this suit in September 2009, alleging, among other things, that Penske Corp. "fail[ed] to inspect, maintain and repair" the

---

[3] Notably, plaintiffs admit that Penske LP "was responsible for the plaintiff[s'] Workers' Compensation benefits, covered under the same Workers' Compensation policy."  (*Compare* Def.'s SMF ¶ 16, *with* Pls.' SMF ¶ 16.)  Plaintiffs also contend that Penske Logistics was legally obligated to provide those benefits—a statement denied by Penske Corp. as calling for a legal conclusion.  (*Compare* Pls.' SMF ¶ 30, *with* Dkt. No. 115, Attach. 5 at 3.)

trucks in which they claim to have been injured.  (Am. Compl. ¶¶ 14, 68.) Following extensive discovery, Penske Corp. moved for summary judgment on its affirmative defense that it is insulated from liability because of "the exclusive remedy doctrine set forth in [N.Y. Workers' Compensation Law §§ 11 and 29(6)]."  (Dkt. No. 68 ¶ 267; *see* Dkt. No. 105.)  Despite the fact that discovery had been stayed pending a decision on the motion by text order entered September 12, 2011, plaintiffs requested additional discovery relevant to Penske Corp.'s motion.  (*See* Dkt. No. 102.)  By text order entered November 17, 2011, plaintiffs' application was denied with notice that they could seek relief pursuant to Fed. R. Civ. P. 56(d) in their papers opposing the summary judgment motion.  (*See* Dkt. No. 111.)

## IV.  Standard of Review

The standard of review pursuant to Fed. R. Civ. P. 56 is well established and will not be repeated here.  For a full discussion of the standard, the court refers the parties to its decision in *Wagner v. Swarts*, No. 1:09–cv–652, 2011 WL 5599571, *4 (N.D.N.Y. Nov. 17, 2011).

## V.  Discussion

Penske Corp. argues that, given Penske LP's close relationship with Penske Logistics, it—the general partner of Penske LP—should be treated

6

as plaintiffs' employer for purposes of N.Y. Workers' Compensation Law § 11, which limits the recovery of an employee as against his employer to workers' compensation benefits alone. (*See* Dkt. No. 105, Attach. 2 at 2, 5-9.) Specifically, Penkse Corp. contends that Penske Logistics is Penske LP's alter ego. (*See id.* at 5-8.) Plaintiffs assert in opposition that, because Penske LP did not exercise sufficient domination and control of Penske Logistics, Penske Logistics is not Penske LP's alter ego. (*See* Dkt. No. 111 at 14-24.) Because an issue of fact exists, the court denies the motion.[4]

"[W]hen an employee is injured in the course of his employment, his sole remedy against his employer lies in his entitlement to a recovery under the Workers' Compensation Law." *Billy v. Consol. Mach. Tool Corp.*, 51 N.Y.2d 152, 156 (1980) (citation omitted); *see* N.Y. Workers' Comp. Law §§ 11, 29(6); *McClary v. O'Hare*, 786 F.2d 83, 85 (2d Cir. 1986). However, a parent corporation may be deemed an employer for purposes of the

---

[4] The arguments made by plaintiffs that neither a special employment relationship nor joint venture existed—theories that, if proven, might warrant protection for Penske Corp. under N.Y. Workers' Compensation Law § 11 (*see* Dkt. No. 111 at 16-17, 22-23)—are not directly relevant here because Penske Corp., who has the burden of establishing its entitlement to the protection of N.Y. Workers' Compensation Law § 11, *see Smith v. Roman Catholic Diocese of Syracuse*, 252 A.D.2d 805, 805 (3d Dep't 1998), did not raise those theories in its motion papers.

exclusivity rule if its subsidiary functions as its alter ego.  *See Coneo v. Washington Heights Hellenic Orthodox Church, Inc.*, 81 A.D.3d 525, 526 (1st Dep't 2011).  "[T]he standard for finding an alter ego relationship is high, requiring direct intervention by the parent in the management of the subsidiary to such an extent that the subsidiary's paraphernalia of incorporation, directors and officers are completely ignored."  *Len v. State*, 74 A.D.3d 1597, 1599 (3d Dep't 2010) (internal quotation marks and citations omitted).  Simply put, the parent "must exercise complete domination and control" over its subsidiary's daily operations in order to give rise to the protection of Workers' Compensation Law § 11.  *Dennihy v. Episcopal Health Servs., Inc.*, 283 A.D.2d 542, 543 (2d Dep't 2001).

Here, the line separating Penske LP and Penske Logistics is blurred.  For instance, Penske Logistics cannot hire or fire an employee without communication with Penske LP, (*see* Def.'s SMF ¶ 20); Penske LP maintains a single policy manual with rules for both its employees and those of Penske Logistics, (*see id.* ¶¶ 17, 19); Penske LP and Penske Logistics share a tax identification number and filed joint tax returns during the relevant time period, (*see id.* ¶¶ 13-14); Penske LP directly paid plaintiffs for their labor, (*see id.* ¶ 12); and Penske LP was responsible for

8

the payment of workers' compensation benefits to plaintiffs, (*see id.* ¶ 16). On the other hand, Penske Logistics and Penske LP are independent of each other in several meaningful ways: Penske Logistics accepted job applications from, hired, and trained plaintiffs, (*see* Pls.' SMF ¶¶ 5-9); Penske Logistics maintained internal financial records apart from those of Penske LP, including its accounting for internal cost and profit centers separately and keeping separate budgets, (*see id.* ¶¶ 13, 16-18); and Penske Logistics has its own human resources department and is responsible for assessing discipline of its employees, (*see id.* ¶¶ 22, 26). The foregoing, taken together, demonstrates the existence of a genuine issue of material fact as to whether Penske LP and Penske Logistics are, in reality, a single entity despite the legal form of each. *See Madi v. United Parcel Serv. Gen. Servs. Co.*, No. 96 Civ. 1654, 1999 WL 771389, at *6 (S.D.N.Y. Sept. 29, 1999). Accordingly, Penske Corp.'s motion for summary judgment must be denied.[5]

## VI. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

---

[5] In light of the court's decision to deny Penkse Corp.'s motion, plaintiffs' cross motion seeking additional time for discovery under Fed. R. Civ. P. 56(d) is denied as moot.

**ORDERED** that Penske Corp.'s motion for summary judgment (Dkt. No. 105) is **DENIED**; and it is further

**ORDERED** that plaintiffs' cross motion (Dkt. No. 111) is **DENIED** as moot; and it is further

**ORDERED** that the parties shall contact Magistrate Judge Lowe within seven (7) days of the date of this Memorandum-Decision and Order to address any outstanding discovery issues; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

February 10, 2012
Albany, New York

_____
Gary L. Sharpe
Chief Judge
U.S. District Court